**In the Matter of the ADOPTION OF J.J., a minor child.**

**Fred BULLOCK and Linda Bullock, Appellants,**

**v.**

**UTAH DEPARTMENT OF SOCIAL SERVICES, DIVISION OF FAMILY SERVICES; and Steven Kaelin, Guardian of the Minor Child, Respondents.**

**Fred BULLOCK and Linda Bullock, Appellants,**

**v.**

**UTAH DEPARTMENT OF SOCIAL SERVICES, DIVISION OF FAMILY SERVICES; and Steven Kaelin, Guardian of the Minor Child, Respondents.**

**Nos. 890334–CA, 890404–CA.**

Court of Appeals of Utah.

Oct. 3, 1989.

L. Zane Gill, Salt Lake City, for appellants.

R. Paul Van Dam, Linda Luinstra–Baldwin, and Paul Tinker, Salt Lake City, for respondents.

Before JACKSON, ORME and GARFF, JJ.

## MEMORANDUM DECISION

PER CURIAM:

This is a consolidated appeal involving two cases originating in the Third District Court. The first appeal (Case No. 890334-CA) is from the dismissal of a petition for adoption of the minor child, J.J. The petition, filed by Fred and Linda Bullock, J.J.'s foster parents, was dismissed based on the refusal of the Division of Family Services (DFS) to consent to the adoption. The district court found the adoption petition did not invoke its jurisdiction because DFS refused to consent to the adoption. The second appeal (Case No. 890404-CA) involves the district court's review of DFS's decision to terminate foster care for J.J. and place the child for adoption. The review was conducted pursuant to the Utah Administrative Procedures Act (UAPA), Utah Code Ann. § 63-46b-1 to 63-46b-22 (Cum.Supp. 1988). In the latter case, appellants sought a preliminary injunction restraining DFS from removing J.J. from their home pending the outcome of both the administrative proceedings and the appellate review of the dismissal of the adoption proceedings. The district court concluded that adoptive placement was in J.J.'s best interests and the appellants could not adopt the child due to DFS's refusal to consent and, on that basis, further concluded that the child should be removed from the appellants' home to allow the adoption to proceed. Appellants moved this court to stay the order in Case No. 890404-CA pending the disposition of their appeals of both district court orders.

In its order dated July 14, 1989, this court granted the stay and requested the parties to file, on or before August 4, 1989, simultaneous memoranda on the issue of the Third District Juvenile Court's continuing jurisdiction as it relates to the matters at issue in the consolidated appeal, to include, but not be limited to, a discussion of Utah Code Ann. §§ 78-3a-16.3, 78-3a-17(3)(b), and 78-3a-48(4). Based on our review of the case in the context of this jurisdictional issue, we reverse the decision in the adoption proceeding (Case No. 890334-CA) and defer ruling on the appeal of the decision in the remaining case (Case No. 890404-CA).

### I.

The juvenile court has exclusive original jurisdiction over proceedings concerning a child who is neglected or dependent, within the meaning of Utah Code Ann. § 78-3a-2.[1] Utah Code Ann. § 78-3a-16(1)(c)(i) (Supp.1989). Once a child has come within the jurisdiction of the juvenile court, that court obtains jurisdiction over proceedings to determine custody or appoint a guardian for the child and to terminate the legal parent-child relationship. Utah Code Ann. § 78-3a-16(1)(e) and (f) (Supp.1989). The juvenile court may, by court order, make the dispositions in the case that are enumerated in Utah Code Ann. § 78-3a-39 (Supp.1989). Thereafter, the child remains within the jurisdiction of the juvenile court until age 21 unless earlier terminated as provided in Utah Code Ann. § 78-3a-40(2)(a) (Supp.1989). An order under section 78-3a-39 placing a child with an individual or agency must be reviewed by the juvenile court at intervals to be specified by the court in its order and in all subsequent orders. Utah Code Ann. § 78-3a-39(20) (Supp.1989). Upon entry of an order terminating parental rights, the juvenile court "may (a) place the child in the legal custody and guardianship of a

1. Utah Code Ann. § 78-3a-2(9) (Supp.1989) defines a "dependent child" as including "a child who is homeless or without proper care through no fault of his parent, guardian, or custodian." Utah Code Ann. § 78-3a-2(15) (Supp.1989) defines "neglected child" as including a child: "(a) whose parent, guardian, or custodian has abandoned him or subjected him to mistreatment or abuse; (b) who lacks proper parental care by reason of the fault or habits of the parent, guardian, or custodian; (c) whose parent, guardian, or custodian fails or refuses to provide proper or necessary subsistence, education, or medical care, including surgery or psychiatric services when required, or any other care necessary for his health, morals or well-being; or (d) who is at risk of being a neglected or abused child as defined in this section because another child in the same home is a neglected or abused child as defined in this section."

child placement agency or the department of public welfare for purposes of adoption, or (b) make any other disposition of the child under § 78–3a–39." Utah Code Ann. § 78–3a–48(4) (1978).

On or about March 18, 1986, DFS, by and through the Salt Lake County Attorney's Office, petitioned the juvenile court to bring J.J. within its jurisdiction as a dependent and/or neglected child. On June 25, 1986, the Third District Juvenile Court entered an order finding, *inter alia*, that J.J. was within its jurisdiction pursuant to Utah Code Ann. § 78–3a–16(1)(e). Appellants state in their brief, with our emphasis, that the natural parents "actually relinquished their rights *voluntarily*," which was "formalized, however, by an order of the juvenile court." Similarly, the State has consistently represented that the natural parents "voluntarily relinquished [J.J.] to the Division of Family Services and the Juvenile Court entered an order giving custody and guardianship of the child to the Division of Family Services."

We take judicial notice of the proceedings in the juvenile court pursuant to Utah R.Evid. 201(c). That record does not support either characterization of the juvenile court's involvement. The juvenile court placed J.J. in the custody and guardianship[2] of DFS in June of 1986, subject to review hearings held at six month intervals, and that status has been continued by court order since that time. In March 1988, J.J.'s natural parents voluntarily petitioned the juvenile court to terminate their parental rights pursuant to Utah Code Ann. § 78–3a–48(5) (1987). The petitions

make no reference to relinquishment to DFS. The juvenile court granted the petitions after making a determination of the best interests of the child and continued the custody and guardianship of DFS for the purpose of adoptive placement.[3]

We conclude that J.J. is within the continuing jurisdiction of the juvenile court and that the source of DFS's custody and guardianship of the child is the order of the juvenile court, under whose supervision and control DFS's custody and guardianship continues.

II.

The relationship between the subject matter jurisdiction of the district court and juvenile court has been the subject of frequent legislative and judicial action, and the issues presented in this case are best viewed in the context of that history. The Juvenile Court Act of 1965 included the following provisions:

Nothing contained in this act shall deprive the district courts of jurisdiction in adoption proceedings.

Nothing contained in this act shall deprive the district courts of jurisdiction to appoint a guardian for a child, nor of jurisdiction to determine the custody of a child upon writ of habeas corpus or when the question of custody is incidental to the determination of a cause in the district court; provided that in case a petition involving the same child is pending in the juvenile court or the juvenile court has previously acquired continuing jurisdiction over the same child, the district court shall certify the question of custo-

---

**2.** " 'Guardianship of the person' includes among other things, the authority to consent to marriage, to enlistment in the armed forces, and to consent to major medical, surgical or psychiatric treatment. 'Guardianship of the person' includes legal custody, if legal custody is not vested in another person, agency, or institution." Utah Code Ann. § 78–3a–2(13) (Supp.1989). " 'Legal custody' means a relationship embodying the following rights and duties: (a) the right to physical custody of a child; (b) the right and duty to protect, train, and discipline him; (c) the duty to provide him with food, clothing, shelter, education, and ordinary medical care; (d) the right to determine where and with whom he shall live; and (e) the right in an

emergency, to authorize surgery or other extraordinary care." Utah Code Ann. § 78–3a–2(14) (Supp.1989).

**3.** The juvenile court record reflects that, following a hearing on March 29, 1988, the court ruled from the bench, in relevant part, that the natural parents' rights were permanently and completely terminated and that the child was to "continue in the custody and guardianship of the State Division of Family Services for suitable adoption." Although counsel was requested to prepare appropriate findings and an order for the court's signature, we could locate no signed order in our review of the record.

dy to the juvenile court for determination.

A district court may at any time decline to pass upon a question of custody and may certify that question to the juvenile court for determination or recommendation.

1965 Utah Laws, ch. 165, § 16. The section was originally codified as Utah Code Ann. § 55–10–78.

The Utah Supreme Court construed the last paragraph of this provision in *State ex rel. Thornton,* 18 Utah 2d 297, 422 P.2d 199 (Utah 1967), and held that the proper interpretation to be placed upon the section was:

That if and when the District Court avails itself of such a referral to the Juvenile Court, it is only for the purpose of having the agencies of the Juvenile Court, with the assistance of the Judge, to make an evaluation, determination or recommendation. That this having been done by the Juvenile Court, the Juvenile Court in turn should make such findings and recommendations pursuant to the information which it has received for evaluation and consideration affecting the custody of the minor children, and refer the matter again to the District Court for its final determination. We think to do otherwise would in reality distort and make unrealistic the duties and obligations vested in the District Courts of the State.

422 P.2d at 201 (footnote omitted).

In 1973, the Utah Legislature amended Utah Code Ann. § 55–10–77 (Exclusive jurisdiction of juvenile courts) and Utah Code Ann. § 55–10–78, (Concurrent jurisdiction—District Court jurisdiction). Section 55–10–77 was amended to add the language: "Any judge of the juvenile court may at the request of any judge of [the] district court, sit as a judge of the district court and shall have the same powers as the judge thereof." 1973 Utah Laws, ch. 120, § 1. Section 55–10–78 was amended to include the following language: "Any district judge may, at the request of any judge of the juvenile court, sit as judge of the juvenile court and shall have the same

powers as the judge thereof." 1973 Utah Laws, ch. 120, § 2.

In *State ex rel. Hales,* 538 P.2d 1034 (Utah 1975), the Utah Supreme Court considered the language of Utah Code Ann. § 55–10–78 providing that, in cases where the juvenile court "has previously acquired continuing jurisdiction over the same child, the district court shall certify the question of custody to the juvenile court for determination." *Hales* was a habeas corpus proceeding to regain custody of a child. The court held that, if the statute purported to compel "the district court to transfer jurisdiction in a habeas corpus matter over to the juvenile court for final determination, then the statute would be invalid as an attempt by the legislature to deprive the district courts of powers granted to them by the Constitution of Utah." 538 P.2d at 1035. The court, without discussing the 1973 amendments, cited the 1971 *Thornton* case with approval:

This court in the case of *State in re Thornton* held that when a matter was certified by the district court to the juvenile court pursuant to Section 55–10–78 ... that the juvenile court could not make a final decision but should make recommendations and refer the matter back to the district court for a final order.

That case pertained to custody of minor children in a divorce proceeding, but we think the reasoning therein applies equally as well to habeas corpus proceedings, since the juvenile courts do not have jurisdiction over either divorce matters or writs of habeas corpus.

*Id.* at 1035–36.

In 1977, the Utah Supreme Court addressed the language of section 55–10–78 and the relationship of juvenile court and district court jurisdiction in two cases. *State ex rel. Izatt,* 572 P.2d 390 (Utah 1977), like *Hales,* involved a habeas corpus proceeding seeking custody of a child initiated while a petition involving the same child was pending in juvenile court. The court held that the district court acted correctly in taking jurisdiction over the habeas corpus matter and requesting the juvenile

court to make its findings and recommendations and then refer the case back to the district court for disposition of the habeas corpus petition. *Id.* at 393. The court cited *Thornton* and *Hales* for the proposition that the district court could not be deprived of jurisdiction to determine the custody of a child upon a petition for writ of habeas corpus.[4] *State ex rel. Summers v. Wulffenstein*, 571 P.2d 1319 (Utah 1977), was a grandparent's appeal from the dismissal of a petition for custody of two children who had been placed with DFS for adoption following the termination of parental rights. The juvenile court concluded that it lacked jurisdiction to consider the petition. The Utah Supreme Court held that vesting legal custody in DFS did not terminate the continuing jurisdiction of the juvenile court, and stated: "Prior to any adoption proceedings, over which the district court has exclusive jurisdiction, the Juvenile Court has jurisdiction to modify or set aside an order vesting legal custody in the Division of Family Services." *Id.* at 1321. The court compared the situation in *Wulffenstein* to that in *Hales*, noting that section 55–10–78 required certification of the issue of custody to the juvenile court for recommendation and *Hales* then required a remand to the district court for final determination. The court reversed the dismissal and remanded the case for a hearing on the merits of the petition, stating:

> [T]here is no [statutory] provision granting to the Division power to confer legal custody, which by its nature is a judicial act. If one desires to assert an interest in a child in the legal custody of the Division, such a proceeding is a judicial function. When the Division has been vested with legal custody pursuant to a disposition under 55–10–100, the Juvenile Court under the mandatory provision of 55–10–101 retains continuing jurisdiction. The Juvenile Court is the proper forum to seek modification of such a custody order, although one is not precluded from filing a petition for a writ of habeas corpus in the district court to determine the custody of a child.

*Id.* at 1322.

Section 55–10–78 was later redesignated as Utah Code Ann. § 78–3a–17, and sections 55–10–100 and 55–10–101 were redesignated as Utah Code Ann. §§ 78–3a–39 and 78–3a–40, respectively.

In 1985, the Utah Legislature again attempted to clarify the relationship of district court and juvenile court jurisdiction with amendments to Utah Code Ann. § 78–3a–17 and the enactment of Utah Code Ann. § 78–3a–16.3. The amendment to section 78–3a–17, in relevant part, added subsection (5) and amended subsections (3) and (4) to, among other things, provide for certification to the juvenile court of cases involving support and visitation as well as custody questions. The substance of subsection (2) had appeared in previous versions, but now was placed in a separate, numbered subsection. Section 78–3a–17 thus read, in relevant part:

> (2) Nothing contained in this section deprives the district courts of jurisdiction in adoption proceedings.
>
> (3) Nothing contained in this section deprives the district courts of jurisdiction to appoint a guardian for a child, nor of jurisdiction to determine the support, custody, and visitation of a child upon writ of habeas corpus or when the ques-

---

4. *Cf. City & County of Denver v. District Court,* 675 P.2d 312 (Colo.1984), in which the Colorado Supreme Court held that statutory language substantially similar to the version of Utah Code Ann. § 55–10–78 considered in the *Izatt* case precluded a district court from ruling upon a habeas corpus petition to obtain custody of a child because a petition respecting that child was pending in juvenile court. The court held:

> The [Social Services] Department's filing of a valid petition for determination of dependency or neglect on July 25, 1983, conferred continuous exclusive jurisdiction upon the juvenile court to determine the status of the child. The petition for writ of habeas corpus, filed by the father on September 22, 1983, in essence required a determination of whether the father or the mother was the legal custodian of the child. Therefore, pursuant to section 19–1–104(5)(a), the district court had no jurisdiction to entertain such proceeding and was required to certify the habeas corpus proceeding to the juvenile court for ultimate resolution.

675 P.2d at 315 (citations and footnote omitted).

tion of support, custody, and visitation is incidental to the determination of a cause in the district court. However, if a petition involving the same child is pending in the juvenile court or the juvenile court has previously acquired continuing jurisdiction over the same child, the district court shall certify the question of support, custody, and visitation to the juvenile court for determination.

(4) A district court may at any time decline to pass upon a question of support, custody, and visitation and may certify those questions to the juvenile court.

(5) When a case is certified to the juvenile court under Subsection (3) or (4), the certification is a request by the district court that a judge of the juvenile court sit as a district court judge. The juvenile court judge to whom the case is assigned shall sit as a district court judge for the case. The findings and order in the case are the order of the district court.

1985 Utah Laws, ch. 63, § 1 (codified as Utah Code Ann. § 78–3a–17 (1987)). In the same session, the Utah Legislature enacted section 78–3a–16.3(1), which then provided:

The juvenile court has jurisdiction in adoption proceedings where the court has previously entered an order terminating the rights of a parent and the court finds that adoption is in the best interests of the child. Adoption proceedings

under this section shall follow the procedure set forth in Chapter 30, Title 78. The enactment of the foregoing sections resulted in a statutory inconsistency, in that section 78–3a–17 purported to leave exclusive jurisdiction over adoption proceedings in district court, while section 78–3a–16.3 purported to vest exclusive jurisdiction over a segment of adoption proceedings in the juvenile court. In 1987, the Utah Legislature amended section 78–3a–16.3(1) to provide for "concurrent" jurisdiction in the juvenile courts and district courts over adoption proceedings in situations "where the [juvenile] court has previously entered an order terminating the rights of a parent and the court finds that adoption is in the best interests of the child." Utah Code Ann. § 78–3a–16.3(1) (1987).

The 1988 amendments to Utah Code Ann. § 78–3a–17, in addition to making minor stylistic changes throughout, divided subsection (3) into subsections [5] and rewrote subsection (5) to read:

When a question is certified to the juvenile court under Subsection (3) or (4), the findings and order of the juvenile court judge are the order of the district court.

Utah Code Ann. § 78–3a–17 (Supp.1989).[6]

The amendments in 1985, 1987 and 1988 reflect the most recent efforts by the Utah Legislature to ameliorate the problems that arise from a jurisdictional conflict between

---

**5.** After the 1988 amendments, subsections (2) and (3) read:

(2) This section does not deprive the district courts of jurisdiction in adoption proceedings. (3)(a) This section does not deprive the district courts of jurisdiction to appoint a guardian for a child, or to determine the support, custody, and visitation of a child upon writ of habeas corpus or when the question of support, custody, and visitation is incidental to the determination of a cause in the district court.

(b) However, if a petition involving the same child is pending in the juvenile court or the juvenile court has previously acquired continuing jurisdiction over the same child, the district court shall certify the question of support, custody, and visitation to the juvenile court for determination.

Utah Code Ann. § 78–3a–17 (Supp.1989).

**6.** The 1988 amendment to section 78–3a–17 also deleted former subsection (8), which had read: "Any district judge may, at the request of any

judge of the juvenile court, sit as a judge of the juvenile court and shall have the same powers as the juvenile court judge." Utah Code Ann. § 78–3a–17 (Supp.1989). Similarly, an amendment to section 78–3a–16 rewrote former subsection (2) which had read: "Any judge of the juvenile court may at the request of any judge of the district court, sit as a judge of the district court and shall have the same powers as the district judge." That subsection now states: "The juvenile court has jurisdiction over questions of custody, support and visitation certified by the district court." When read together with section 78–3a–17(5), these amendments reflect a statutory procedure whereby questions of support, custody, and visitation are certified to the juvenile court for determination under section 78–3a–17(3) or (4), and the order of the juvenile court is the order of the district court, making it unnecessary for the juvenile court judge to sit as a district court judge.

the district and juvenile courts. This case illustrates the difficulty that can result when two courts are involved in the adjudicative process with the same child. Delay and confusion are inevitable. This confusion arises, in part, from the Utah Legislature's recognition that the district court and its jurisdiction are created specifically by the Constitution of Utah, art. VIII, § 5, and that the juvenile court is a specialized court, created by the legislature pursuant to this same constitutional article, whose jurisdiction is limited to that specifically granted by statute. Utah Code Ann. § 78–3a–17 attempts to preserve these legitimate differences and still allow the juvenile court to maintain its exclusive jurisdiction in cases within the continuing jurisdiction of that court. However, when the legislature left concurrent jurisdiction in both courts over adoption proceedings in cases where the juvenile court had previously entered an order terminating parental rights, the confusion presented in the present case was one of the unintended consequences. Having two courts concerned with the best interests of the same child cannot be in the child's best interest. The lengthy involvement of the juvenile court in this case and the very nature of the dispute make inescapable the conclusion that the adoption proceeding would have been more appropriately handled by the juvenile court.

### III.

■ We now turn to the merits of the appeal from the district court's dismissal of the adoption petition. The district court determined that, without the consent of DFS as the "child placing agency," its jurisdiction to consider a petition for adoption was not invoked.[7] Utah Code Ann.

§ 78–30–4(1) (1987) provides, in relevant part:

A child cannot be adopted without the consent of each living parent having rights in relation to said child, except that consent is not necessary from a father or mother who has been judicially deprived of the custody of the child on account of cruelty, neglect or desertion; provided, that the district court may order the adoption of any child, without notice to or consent in court of the parent or parents thereof, whenever it shall appear that the parent or parents whose consent would otherwise be required have theretofore, in writing, acknowledged before any officer authorized to take acknowledgments, released his or her or their control or custody of such child to any agency licensed to receive children for placement or adoption under Chapter 8a, Title 55, and such agency consents, in writing, to such adoption or whenever it shall appear that the parent or parents whose consent would otherwise be required have theretofore, in writing, released his or her or their control, custody, and all parental rights and interests in such child to any agency licensed or authorized by statute to receive children for placement or adoption in any state pursuant to that state's laws and said agency has in turn, in writing, released its control and custody of such child to any agency licensed under Chapter 8a, Title 55, or to any person, or persons, selected by that agency licensed under Utah law, as adoptive parents for aid child, and such Utah agency consents, in writing, to such adoption.

Chapter 8a, Title 55 was repealed by the 1988 Utah Legislature and replaced by the provisions appearing at Utah Code Ann. § 62A–4–201 to 62A–4–205 (Cum.Supp.

---

7. The district court ruling states:

It is the Court's opinion that the adoption statute of Utah is mandatory in requiring the consent of the adoption placing agency, and that statute must be strictly construed and interpreted as finding that the consent has been given in order to invoke the jurisdiction of the court. Without the requisite consents, the Court feels that it cannot reach the issue

of the best interests of the child. In this case, since the child placing agency having custody of the child is unwilling to consent to the adoption, and consent being a mandatory condition, the Court has no option but to grant the Respondent's motion to dismiss the adoption proceedings. It is hereby ordered that the Respondent's motion to dismiss is granted.

1988).[8] DFS alleged in the district court proceedings that it is a licensed child placing agency licensed under section 62A–4–201, and that assertion has not been challenged.[9] Based on the record before the district court, which did not include the consent of DFS, that court concluded that it could take no further action on the Bullock's petition. Because we conclude that, under the unique circumstances of this case, the district court should have certified the case to the juvenile court, we hold that the district court erred in dismissing the adoption petition.

The lengthy involvement of the juvenile court in the case ultimately resulting in the termination of the natural parents' rights to J.J., coupled with the statutory scheme intended to address jurisdictional conflicts, required the certification of this case. The unique circumstances supporting this result include: (1) the length and nature of the juvenile court's involvement; (2) the source of DFS's guardianship and custody through the juvenile court's order; (3) the nature of the dispute here, which is between the foster parents with whom the child resided for a significant period, and DFS, the state agency that facilitated and supervised that foster placement; (4) the unique relationship between DFS and the juvenile court; (5) the existence of apparently credible evidence supporting the appellants' claims; and (6) the participation by an independent guardian ad litem in the juvenile court. The issues clearly concern the status of DFS as J.J.'s legal custodian pursuant to the orders of the juvenile court. As such, the questions raised in this adoption proceeding are questions of "cus-tody" requiring certification to the juvenile court under subsection (3) of Utah Code Ann. § 78–3a–17.

■ DFS asserts that, because the juvenile court is bound by section 78–3a–16.3(1) to conduct its adoption proceedings in accordance with "the procedure in Chapter 30, Title 78," the juvenile court "would be compelled to dismiss an adoption petition when the petitioners cannot allege and prove that the child placing agency having custody and guardianship of the child has consented to the adoption of the child by the petitioners." DFS also contends that Utah Code Ann. § 78–3a–48(4) (1987) compels the juvenile court to place all adoptable children for adoption and, when read in connection with Utah Code Ann. § 78–3a–39(2) (Supp.1989), precludes any other placement of an adoptable child. Finally, DFS notes that although the juvenile court and the district court would have concurrent jurisdiction to hear the adoption petition, the appellants chose the district court, not the juvenile court, as their forum. We reject the State's attenuated reasoning in support of its ultimate assertion—that the actions and decisions of DFS in withholding consent to an adoption are insulated from judicial review. Utah Code Ann. § 78–3a–39(20) (Supp.1989) clarifies that, in cases such as the present one, the status of DFS as custodian and guardian is subject to judicial review and may be either terminated or continued by order of the juvenile court. It is inherent in this statutory provision that judicial review of the actions of DFS is not curtailed because the child has been placed with DFS for pur-

8. While Chapter 8a, Title 55 authorized DFS to license child placing agencies, the replacement provisions create an Office of Licensing within the Department of Social Services to perform this function. *See* Utah Code Ann. § 62A–2–101 to 62A–2–116 (Cum.Supp.1988). Utah Code Ann. § 62A–4–201 (Cum.Supp.1988) defines "child placing agency" as: "an individual, agency, firm, corporation, association, or group children's home that engages in child placing," and "child placing" as: "(a) receiving, accepting or providing custody or care for a child, temporarily or permanently, for the purpose of finding a person to adopt the child; or (b) placing a child, temporarily or permanently, in a home for adoption or substitute care." DFS is authorized by Utah Code Ann. § 62A–4–108(1)(a) (Cum. Supp.1988) to provide adoption services. DFS represents that it is a licensed child placing agency under Utah Code Ann. § 62A–4–201.

9. Utah Code Ann. § 62A–4–205 (Cum.Supp. 1988) provides: "A child placing agency is not required to present its license, issued under Chapter 2 of this title, or its certificate of incorporation, or proof of its authority to consent to adoption, as proof of its authority in any proceeding in which it is an interested party, unless the court or a party to the proceeding requests that the agency or its representative establish proof of authority."

poses of adoptive placement after a court-ordered termination of parental rights. *See also State ex rel. ·Summers v. Wulf-fenstein*, 571 P.2d at 1321 (the juvenile court retains jurisdiction to set aside an order vesting legal custody in DFS for purposes of adoptive placement).

We reverse the judgment dismissing the adoption petition in Case No. 890334–CA and remand the case with instructions to certify the case to the Third District Juvenile Court for further proceedings. Because we conclude that the issues raised in the adoption petition should be considered by the juvenile court, we defer ruling on the merits of the appeal from the judgment entered in Case No. 890404–CA.[10] The stay of the district court's judgment in Case No. 890404–CA entered by this court shall remain in effect pending the disposition of that appeal, unless it is earlier terminated by this court upon the written motion of one or more of the parties after culmination of the juvenile court's consideration of the adoption petition and related matters. The decision of the Third Judicial District Court in Case No. 890334–CA is reversed, and the case is remanded with instructions to certify the case to the juvenile court pursuant to Utah Code Ann. § 78–3a–17(3) (Supp.1989). Further proceedings in Case No. 890404–CA are stayed for an indeterminate period pending the resolution of the juvenile court's proceedings in Case No. 890334–CA.[11]

JACKSON, GARFF and ORME, JJ., concur.

**10.** Our disposition makes it unnecessary to resolve the potential statutory conflict that may arise where the juvenile court has continuing jurisdiction, pursuant to Utah Code Ann. § 78–3a–39, to review the actions of DFS as custodian and guardian of a child in foster care and the district court has jurisdiction to review DFS's decision to terminate foster care, pursuant to UAPA, Utah Code Ann. §§ 63–46b–1 to 63–46b–22.

**11.** We recognize that the proceeding in juvenile court may have the effect of rendering the remainder of this appeal moot. We remind the parties of their responsibility under R.Utah Ct. App. 37 to make an appropriate suggestion of mootness.