STATE of Utah, in the interest of T.S., a person under eighteen years of age.

C.S., Appellant,

v.

STATE of Utah, Appellee.

No. 950783–CA.

Court of Appeals of Utah.

Nov. 21, 1996.

John E. Laherty, Salt Lake City, for Appellant.

Jan Graham and Jeffrey Buckner, Salt Lake City, for Appellee.

Before GREENWOOD, JACKSON, and WILKINS, JJ.

WILKINS, Judge:

C.S. appeals the trial court's order denying her motion requesting a new service plan designed to reunite her with her grandchild T.S. We affirm.

## BACKGROUND

Appellant C.S. is the maternal grandmother of the child T.S. In June 1990, about a year after the child's birth, the Utah Division of Child and Family Services (DCFS) filed a petition on behalf of the child, alleging that the child was dependent due to the child's mother's inability to provide proper parental care. The trial court granted the dependency petition and transferred legal custody of the child to DCFS.

In April 1991, C.S. was awarded custody and guardianship of the child when the child's mother voluntarily relinquished her parental rights. By its own terms, the trial court's temporary order awarding C.S. custody and guardianship of the child became a permanent order in June 1991.

C.S. never adopted or attempted to adopt the child. The child resided with C.S. until December 1994, when C.S. voluntarily placed the child in the care of DCFS because she

was facing homelessness. The child was placed with the same foster parents who previously had adopted the child's biological sibling.

Voluntary placement with DCFS is usually for a period of no more than forty-five days. When it became clear to DCFS that the child would need to remain in its custody for more than forty-five days, a shelter hearing was held. The trial court ordered that the child remain in the foster placement.

The State filed a verified petition in January 1995, alleging dependency "because t[hrough] no fault of her own[, C.S.] could not take proper care of [the child]." A hearing was held in January 1995 for the adjudication of the verified petition, to which C.S., represented by counsel, admitted. The court ordered that the child's temporary custody and guardianship continue with DCFS, and authorized the child to continue to reside in the child's foster home placement.

A pretrial conference was held in February 1995. All parties stipulated that dependency existed at the time C.S. voluntarily placed the child with DCFS. The trial court ordered that the child remain in the temporary custody and guardianship of DCFS.

A dispositional hearing was held in April 1995. C.S. moved to dismiss the verified petition because she was in the process of moving to Idaho. The court denied her motion. Instead, the court ordered that custody and guardianship of the child continue with DCFS. The court also adopted DCFS's service plan for the period of February 15, 1995 through August 15, 1995. The service plan included reunification services for the child and C.S.

At a review hearing in June 1995, C.S. moved to restore custody. The State responded by stating that C.S. had failed to meet her obligations as the child's legal guardian; therefore, DCFS anticipated placing the child in foster care for possible adoption rather than returning the child to C.S.'s custody. The Guardian Ad Litem stated that an additional hearing was necessary to address further the status of C.S. and the child. The trial court denied C.S.'s motion to restore custody and reaffirmed its previous

order granting custody and guardianship of the child to DCFS.

In July 1995, C.S. filed a renewed motion to restore custody. In August 1995, at the hearing on this renewed motion, the State presented evidence to support its position that C.S.'s guardianship of the child had been psychologically and emotionally harmful to the child. Based on the evidence presented, the court found that while the child lived with C.S., C.S. left the child for extended periods of time in the care of her son, a convicted child molester and drug abuser, and in the care of her eleven-year-old daughter. The court found that C.S.'s upbringing of the child had exposed the child to abandonment, criminal behaviors, and a lack of care and attention by a parental figure. The court further found that the child had been forced to become self-reliant at an early age because of C.S.'s failure to properly care for the child, and without intervention, the child had the potential of developing into a sociopath. Therefore, the court concluded it would not be in the child's best interest to return to C.S.'s custody.

At the August hearing, the court also concluded that C.S. divested herself of custody and guardianship of the child when she stipulated to the verified petition alleging dependency, and that custody and guardianship were then vested with the State. The court affirmed the order granting custody and guardianship to the State and ordered DCFS to prepare a new service plan within forty-five days, with the goal of a permanent placement for the child. C.S. never appealed the court's orders from the August hearing.

In September 1995, C.S. filed a motion requesting a service plan be designed to reunite her with the child. DCFS, as ordered by the trial court, drafted a new service plan with the goal of adoption rather than the reunification of C.S. and the child.

A hearing was held in November 1995 on C.S.'s motion for a new service plan. The trial court reiterated its ruling from the August hearing that C.S. had surrendered her previous custodial status regarding T.S. when she, with advice of counsel, stipulated to the verified petition alleging dependency. The court further found that C.S.'s counsel

pursued the correct course of action, given C.S.'s status as a grandparent, when she made the motion to restore custody, but that the motion had been denied based on a finding that restoration of custody would not be in the child's best interests. Finally, the court found that C.S. was not a natural or adoptive parent, that C.S. had been afforded a hearing to determine whether it would be in the child's best interests for C.S. to regain custody, and that after that hearing, C.S. had no standing to demand a new service plan directed at reuniting her with the child. Thus, finding C.S. lacked standing to demand a new service plan, the court declined to grant C.S.'s motion.

C.S. appeals the juvenile court's order arising from the November 1995 hearing denying her a new service plan aimed at reunifying her with the child.

## ANALYSIS

C.S. makes two interrelated arguments on appeal: first, that she has residual custodial rights in the child, and that those custodial rights entitle her to a new DCFS service plan aimed at returning the child to her home; and second, that the statute providing for such a reunification service plan is unconstitutionally vague.[1] We hold that the trial court clearly terminated C.S.'s custodial rights, in total, at the August hearing, and that C.S.'s failure to timely appeal bars her from now raising her argument questioning the trial court's ruling. As a result, the statute providing for the reunification plan C.S. seeks is not applicable to her. In addition, because C.S. failed to raise the argument regarding the statute being unconstitutionally vague at the trial court, we will not entertain it for the first time on appeal.

■ C.S. argues that because she was granted permanent custody and guardianship of the child, while the State was granted only temporary custody and guardianship of the child, she still enjoys some form of residual custodial legal rights in the child. C.S. argues the court thus erred in ruling that she

divested herself of custody and guardianship of the child when she stipulated to the dependency petition. C.S. further asserts that because she still enjoys custodial rights in the child, she is entitled to reunification services under section 78–3a–311 of the Utah Code. *See* Utah Code Ann. § 78–3a–311(2)(a) (Supp.1995).

However, in its order arising from the August hearing, the trial court addressed the arguments C.S. now advances on appeal. In that order, the court entered the following findings:

> After having taken the matter under advisement, the Court found that D[C]FS had transferred custody of [the child] to [C.S.] on January, 23[sic] 1991. The Court found that [C.S.] never adopted [T.S.] *The Court found that [C.S.] transferred custody back to D[C]FS, by stipulating, with the assistance of legal counsel, to the truth of the petition filed by the [S]tate that alleged that [the child] was dependent from her.*

(Emphasis added.) The trial court ruled that C.S. no longer possessed custodial rights of any kind in the child because she divested herself of custody and guardianship of the child when she stipulated to the dependency petition. Furthermore, in its order regarding the November hearing, the trial court discussed in the following findings what occurred at the August hearing and emphasized that it had already ruled upon these arguments:

> On August 23, 1995, with all parties present and represented by counsel, the court received further testimony. [C.S.] argued that she had been awarded "permanent" custody, and insisting there was a difference between permanent custody and temporary custody which created in her a greater relationship than that of a temporary custodian. From the bench the court ruled that [C.S.]'s legal status as [the child]'s custodian had been created pursuant to court order. That status was dissolved when this court subsequently divested her of custody and guardianship.

---

**1.** C.S. also advances other arguments on appeal that we decline to address because they lack merit. *See State v. Carter*, 776 P.2d 886, 888–89 (Utah 1989) (stating appellate courts need not address issues without merit on appeal).

As a court constituted custodian, [C.S.] possessed no residual legal rights comparable to those of a parent who was deprived of custody as provided in [the Utah Code].

In addition, the juvenile court's actions at the August hearing evidence the court had concluded that any existing legal relationship between C.S. and the child had ended. The minute entries of the August hearing state the court made the following orders at the hearing:

1. Previous Order of custody and guardianship with [DCFS] is hereby continued; FURTHER, it is the understanding of the Court that the minor child will remain in [the child's] current placement.

2. [DCFS] is to prepare a permanency placement Service Plan and submit the same to this Court within 45 days. The Service Plan shall become a part of the Court's Order upon submission unless, [sic] objections thereto are noticed up by Motion within 5 days of the submission of the plan.

Therefore, at the August hearing, the court directed that the child remain with the child's foster parents with the goal of a permanent placement, such as adoption.

The court addressed and resolved in the August hearing C.S.'s arguments that she still has custodial rights in the child and that she did not divest herself of custody and guardianship of the child when she stipulated to the dependency petition. C.S. did not appeal. We therefore hold that C.S. waived her right to appeal these issues. *See* Utah Code Ann. § 78–3a–51(1) (1992) (stating appeal to Court of Appeals taken from order, decree, or judgment of juvenile court must be taken "within 30 days from the entry of the order, decree, or judgment appealed from") (repealed 1996) (recodified at Utah Code Ann. § 78–3a–909(1) (Supp.1996)).

Because C.S. failed to appeal the order arising from the August hearing, we decline to address these arguments now. We accept the ruling that C.S. no longer enjoys any relationship as custodian or guardian of T.S. as the law of the case. *See Thurston v. Box*

*Elder County*, 892 P.2d 1034, 1037 n. 2 (Utah 1995) (stating "law of the case . . . describe[s] the rule that a lower court ruling becomes binding on a higher court through failure of the parties to preserve an issue for review"). As such, C.S. cannot now successfully bootstrap an appeal of the August order onto this timely appeal of the order from the November hearing.

■ In addition, because C.S.'s argument regarding her right to reunification services under section 78–3a–311 hinges on her argument that she still has residual custodial rights in the child, that argument fails also. The plain language of the statute only applies to parents. *See* Utah Code Ann. § 78–3a–311(2)(a) (Supp.1995) (providing "whenever the court orders continued removal at the dispositional hearing, and that the minor remain in the custody of [DCFS], it shall order that [DCFS] make reasonable efforts to provide services to the minor and *his parent* for the purpose of facilitating reunification of the family" (emphasis added)). C.S. claims to have rights similar to those of a parent under the statute due to her custodial relationship. However, because the trial court already determined C.S. has no custodial relationship with the child, and because C.S. has failed to appeal from that determination, she lacks the basis upon which to argue her claimed rights as a parent.

■ Finally, appellant's failure to raise the issue before the trial court is fatal to her additional claim that this section is unconstitutionally vague. *See Bundy v. Century Equip. Co.*, 692 P.2d 754, 758 (Utah 1984) (noting "matters neither raised in the pleadings nor put in issue at the trial cannot be considered for the first time on appeal").

## CONCLUSION

We hold that the trial court clearly terminated C.S.'s custodial rights, in total, at the August hearing, and that C.S.'s failure to timely appeal bars her from now arguing that she still has custodial rights in the child. As a result, we conclude that Utah Code

Ann. § 78–3a–311(2)(a) (Supp.1995), the statute providing for the reunification plan C.S. seeks, is not applicable to her. We also conclude that because C.S. failed to raise the argument that the statute is unconstitutionally vague at the trial court, we will not entertain it for the first time on appeal. We therefore affirm the trial court's order declining to order a new DCFS service plan for C.S.

GREENWOOD and JACKSON, JJ., concur.