1999 UT App 238

**STATE of Utah, in the Interest of H.J., M.J., and J.M., persons under eighteen years of age.**

**J.M. and J.M., Appellants,**

v.

**State of Utah, Appellee.**

**No. 981409–CA.**

Court of Appeals of Utah.

Aug. 5, 1999.

116

Mary C. Corporon, Corporon & Williams PC, Salt Lake City, for Appellants.

Jan Graham, Atty. Gen. and John Peterson, Salt Lake City, for Appellee.

Martha Pierce and Tracy S. Mills, Salt Lake City, Guardians Ad Litem.

Before Judges BENCH, BILLINGS, and JACKSON.

## OPINION

BILLINGS, Judge:

¶ 1 Appellants, grandparents of three children, H.J., M.J., and J.M., in the custody of Utah Division of Child and Family Services (DCFS), appeal two orders of the juvenile court.[1] The first order terminated the pa-

---

1. The first J.M. referenced above is the maternal grandmother of the children; the second J.M. is the maternal step-grandfather of the children. The State asserts that the step-grandfather has no special status as a relative. For the purposes of this appeal, we accept without deciding the

rental rights of D.M., the children's mother. The second order dismissed the grandparents' petition for adoption of the children. The appeals were consolidated. We reverse and remand for proceedings consistent with our opinion.

## FACTS

¶ 2 In November 1996, DCFS removed the oldest child, H.J., to protective custody after receiving an allegation of abuse against her step-father.[2] DCFS filed a petition alleging that H.J. and her siblings were abused, neglected, or dependent children. After a hearing in January 1997, the court found the children to be within the court's jurisdiction. The court permitted the mother, D.M., to retain custody of the children. DCFS was to provide family preservation services. The step-father was to have no contact with the children.

¶ 3 In March 1997, DCFS discovered the step-father was again living with the children. As a result, DCFS took protective custody of the children and filed a motion for temporary custody. Shortly after the children were removed, the step-father committed suicide, and D.M. attempted suicide and was hospitalized. At the March 1997 shelter hearing, the court found that DCFS acted reasonably in taking the children into custody and permitted DCFS to retain temporary custody. The court ordered DCFS to investigate appellant J.M. (grandmother) for fitness for a possible kinship placement, and ordered DCFS to provide reunification services to the mother and children.

¶ 4 DCFS initiated the evaluation of grandmother for a kinship placement. Because grandmother lived in Los Angeles, DCFS followed the Interstate Compact for the Placement of Children (ICPC) process, and contacted Los Angeles social services to conduct a home evaluation of grandmother. The evaluation was positive and recommended the children be placed with grandmother.

State's assertion, thus this analysis focuses on J.M., the maternal grandmother, as appellant.

2. H.J.'s step-father was the father of the youngest child, J.M. For ease of reference, he will be referred to as step-father.

¶ 5 On May 27, 1997, grandmother filed a motion for temporary custody of the children. The motion alleged that the children's mother indicated her desire that grandmother care for the children. Additionally, the motion stated that grandmother was willing to be monitored by appropriate agencies to insure the children were cared for, would assure the children received therapy as needed, and would comply with visitation limits as recommended by the children's therapists. At the June 3 review hearing, the court continued the order of temporary custody with DCFS, and set grandmother's motion for temporary custody for an evidentiary hearing because the State opposed a kinship placement with grandmother. The court did not permit grandmother access to caseworker or therapist reports regarding the children.

¶ 6 At the August 22 temporary custody evidentiary hearing, the children's caseworker and therapist testified for the State. Both recommended the children remain in their current foster and group home placements. Both testified the children were progressing well and any disruption would likely result in a therapeutic setback. According to the children's therapist, it would likely take at least six months for the children to form a therapeutic bond with a new therapist. Also, the therapist believed grandmother interacted inappropriately with the children in her single visit after DCFS took custody because she failed to appreciate their special needs resulting from abuse.

¶ 7 The court denied grandmother's motion for temporary custody, finding that a disruption in placement or counseling would be detrimental to the children. The court also found that grandmother did not appreciate the children's special needs, and minimized their problems. Additionally, the court found the children did not feel safe in grandmother's home, and that grandmother would likely permit unauthorized visits by D.M.[3]

Based on these findings, the court concluded placement of the children with grandmother at that time would not be in the children's best interests. Consequently, the court continued the order of temporary custody with DCFS and set the next review hearing for October 23, 1997.

¶ 8 On October 9, 1997, grandmother filed a verified petition requesting permanent custody of the children. At the October 23 review hearing, the court set December 3, 1997, as the date for hearing grandmother's petition. The court also designated December 3 as the twelve-month dispositional review.

¶ 9 At the December 3 hearing, on the State's motion, the court dismissed grandmother's petition for permanent custody without holding an evidentiary hearing. The court concluded the issues in the petition had been previously addressed in the August 22 kinship placement temporary custody hearing. After dismissing grandmother's petition for permanent custody, the court excluded grandmother's attorney from the courtroom for the dispositional hearing. The court then terminated reunification services and set a permanency plan hearing for February 2, 1998.

¶ 10 On February 2, 1998, DCFS filed a petition to terminate D.M.'s parental rights.[4] At the February 2 hearing, the court set March 18 as a pretrial date for the petition. The court also continued the order for temporary custody with DCFS and recognized the permanency plan goal as adoption. At the March pretrial hearing, the court set a trial date of June 8, 1998.

¶ 11 On May 29, 1998, grandmother filed a petition to adopt the children. Included with the adoption petition was a request for termination of parental rights of D.M. The court terminated D.M.'s parental rights on June 8, 1998, after D.M. failed to appear for trial on

---

3.  The court included in its findings of facts that another foster parent was interested in adopting the children. It is unclear why this finding was made or was relevant to a motion for temporary custody. At the time of this hearing, reunification services were being provided, and adoption had not been identified as the goal.

4.  The petition included a request to terminate the father's rights. His rights were terminated by an order dated July 14, 1998.

the State's petition.[5] Custody of the children remained with DCFS, with the goal of adoption. The court excluded grandmother's attorney from the courtroom for the termination trial, agreeing with the State that grandmother was not an interested party.

¶ 12 DCFS filed a motion to dismiss grandmother's adoption petition on July 6. The State claimed grandmother had no standing to petition for adoption, and further, that the August 22 kinship temporary custody hearing established that placement with grandmother would be inappropriate. The court dismissed the adoption petition on October 15, 1998, without holding an evidentiary hearing. The court concluded the August 22, 1997, kinship temporary custody hearing settled matters regarding placement of the children with grandmother. The court also held as a matter of law that grandmother did not meet statutory requirements to file a petition to adopt.

¶ 13 Grandmother now appeals from the termination of parental rights order, specifically attacking the continuation of custody with DCFS. She also appeals the order dismissing her adoption petition.

## ISSUES AND STANDARDS OF REVIEW

¶ 14 Initially, we must decide whether grandmother has standing to appeal the order from the proceeding terminating D.M.'s parental rights. The issue of standing is primarily a matter of law, reviewed for correctness. *See Kearns–Tribune Corp. v. Wilkinson,* 946 P.2d 372, 373 (Utah 1997). Factual findings made by the trial court that bear on standing will be reviewed with deference. *See id.* at 374. Because standing involves important policy considerations, appellate courts "will closely review trial court determinations of whether a given set of facts fits the legal requirements for standing, granting minimal discretion to the trial court." *Id.*

¶ 15 Second, we must determine whether the trial court erred in dismissing grandmother's adoption petition without

holding an evidentiary hearing. The juvenile court based its dismissal on the grounds of res judicata and statutory interpretation. The application of res judicata is a question of law, reviewed for correctness with no deference given to the trial court. *See Gardner v. Madsen,* 949 P.2d 785, 788 (Utah Ct.App. 1997). Issues of statutory interpretation are also matters of law, reviewed for correctness with no deference given to the trial court's interpretation. *See A.E. v. Christean,* 938 P.2d 811, 814 (Utah Ct.App.1997).

## ANALYSIS

### I. Order Terminating Parental Rights and Continuing DCFS Custody

¶ 16 Grandmother appeals the order terminating D.M.'s parental rights, asserting the court erred in continuing custody with DCFS without holding a hearing regarding the best interests of the children.

¶ 17 "Traditional standing criteria require that the interests of the parties be adverse and that the party 'seeking relief have a legally protectible interest in the controversy.' " *State ex rel A.H. v. Mr. & Mrs. H.,* 716 P.2d 284, 286 (Utah 1986) (quoting *Kennecott Corp. v. Salt Lake County,* 702 P.2d 451, 454 (Utah 1985)). Additionally, "an appellant generally must show both that he or she was a party or privy to the action below and that he or she is aggrieved by that court's judgment." *Society of Prof. Journalists v. Bullock,* 743 P.2d 1166, 1171 (Utah 1987).

¶ 18 Under Utah law, notice of a hearing on a petition to terminate parental rights must be provided to the parents, guardian, and custodian of the children. *See* Utah Code Ann. § 78–3a–406 (1996). Grandparents are not entitled to notice. "Relatives other than the parents have no such rights in a child as to require service of process in [a termination] proceeding, nor to have an adjudication of the severance of any asserted right." *Wilson v. Family Servs. Div., Region Two,* 554 P.2d 227, 230 (Utah 1976). Grandmother was not a party to the proceed-

---

5. Although D.M.'s parental rights were effectively terminated on June 8 by virtue of the bench ruling, the order of termination was not filed until July 14. The termination of D.M.'s parental rights made moot that portion of grandmother's petition.

ings below and did not have a protectible legal interest affected by the court's ruling; therefore, she has no standing to appeal the termination of D.M.'s parental rights. *Cf. L.P. v. W.L.P. and K.J.P.*, 590 So.2d 334, 335 (Ala.Civ.App.1991) ("A person not a party to the proceeding below has no standing to bring an appeal to this court.").

¶ 19 Fundamentally, however, grandmother does not disagree with the termination of D.M.'s parental rights. Rather, she seeks to appeal the portion of the order continuing DCFS custody of the children without holding a hearing, when grandmother had previously petitioned for permanent custody of the children. In challenging the termination order, grandmother, in substance, attacks the summary dismissal of her petition for permanent custody.

¶ 20 After her petition for temporary custody was denied, grandmother filed a petition in October 1997 seeking permanent custody of the children. The juvenile court dismissed the petition without an evidentiary hearing on December 3, 1997, stating the custody issues raised had already been addressed. The court dismissed the petition on the same day that reunification services were terminated, and the State recommended the goal be changed to adoption. The dismissal of the petition effectively foreclosed grandmother from receiving a hearing on permanent custody, even though the goal for the children had changed from reunification to a permanent placement.

¶ 21 Arguably the trial court erred in dismissing grandmother's permanent custody petition without holding an evidentiary hearing. However, grandmother does not appeal from the specific order dismissing her petition for permanent custody,[6] but rather

appeals from the termination order, and thus we conclude she has waived this issue.[7] Moreover, we need not address this issue further because our holding on grandmother's adoption petition is dispositive at this stage of the proceedings. *See State v. Morrison*, 937 P.2d 1293, 1298 n. 4 (Utah Ct.App. 1997).

## II. Dismissal of Adoption Petition

¶ 22 Grandmother next contends the juvenile court erred in dismissing her adoption petition. The State puts grandmother in an untenable position by arguing that because she did not have custody of the children, she is not entitled to a hearing on her petition for adoption, thus summarily precluding grandmother from asserting her interests in her grandchildren. If the State's arguments are correct, then there would be no mechanism by which grandmother could protect her interests when a permanency plan goal changes from reunification to adoption.

### A. Order Denying Temporary Custody Not Final Order

¶ 23 As a threshold matter, the State argues grandmother should have appealed the August 1997 order denying grandmother temporary custody after an evidentiary hearing. The State asserts that, by failing to do so, she has waived all custody and adoption issues. The State relies on *In re T.S.*, 927 P.2d 1124 (Utah Ct.App.1996), to support its argument.

¶ 24 In *T.S.*, a grandparent who had been granted permanent legal custody of her grandchild relinquished custody back to DCFS and stipulated to a verified dependency petition. *See id.* at 1124–25. Subsequently, the grandparent filed a motion to restore

---

6. Grandmother's appeal of this order at this time may in any event have been untimely, if the order resolved any and all of her rights to permanent custody of her grandchildren. *See In re T.S.*, 927 P.2d 1124, 1127 (Utah Ct.App.1996).

7. However, we note that it is critical that there be a mechanism for those who have a special relationship with children to assert their interests in custody. Utah recognizes that those with special interests have a right to a hearing. *See In re J.W.F.*, 799 P.2d 710, 714–15 (Utah 1990) (hold-

ing relatives other than parents have inchoate rights entitling them to custody hearing); *Wilson*, 554 P.2d 227, 231 (holding next-of-kin have dormant or inchoate interests in parentless children). To make the exercise of such a right meaningful, the hearing should be held at a point at which a relative still has a meaningful opportunity to gain custody of a child. Although a relative is not guaranteed custody, the longer a permanent custody hearing is delayed, the lower the chance of a noncustodial relative to obtain custody.

custody. The juvenile court held an evidentiary hearing to determine the grandparent's status in relation to the child. At the hearing's conclusion, the court determined it was not in the child's best interest to return to grandparent's custody. The court also concluded that grandparent had no residual custodial rights to the child because she had voluntarily transferred custody back to DCFS and had admitted that the child was dependent. *See id.* at 1125. The court continued the temporary custody with DCFS, and ordered the service plan goal to change to permanent placement of the child through adoption. *See id.* Grandparent did not appeal this order terminating her custodial rights after a hearing on the merits. *See id.*

¶ 25 Grandparent later filed a motion requesting the restoration of reunification services to her and the identification of reunification as the service plan goal rather than adoption. The court denied her motion. Grandparent appealed this order denying her motion for restoration of reunification services and a new service plan. *See id.* at 1126. This court concluded that grandparent had waived custody issues on appeal because she had failed to appeal the order resolving all her legal custodial rights to the child. *See id.*

¶ 26 The State reads *T.S.* to mean that court orders continuing temporary custody with DCFS or denying temporary custody to petitioners are final, appealable orders. This reading of *T.S.* is too broad. In *T.S.*, the court made a final disposition regarding grandparent's permanent custodial rights. This was a final determination of permanent custody rights and thus appealable.[8]

¶ 27 The denial of a motion for temporary custody pending a final disposition or placement of children is not a final, appealable order, because the parties' legal rights and relationships have not been finally determined. This court has noted:

> [t]he finality of an order in juvenile proceedings is determined in a manner similar to judgments and orders in other matters. A final, appealable order is one that ends the current juvenile proceedings, leaving no question open for further judicial action. An order which does not completely determine the rights of the parties ... is merely interlocutory in nature. *In re T.D.C.,* 748 P.2d 201, 202 (Utah Ct.App.1988) (memorandum decision).

¶ 28 In this case, grandmother's rights and status in relation to her grandchildren were not completely resolved in the August order, and thus the order was not appealable. By its terms, the order was limited in scope. The court addressed only the issue of whether grandmother was a suitable temporary kinship placement, pursuant to statute. The court order denied grandmother's motion for temporary custody, continued custody with DCFS, granted grandmother visitation rights in the discretion of the children's therapist, and set a date for further review. Grandmother still had a legal familial relationship with the children and the opportunity to petition for permanent custody, and certainly for adoption, at a later date when reunification was no longer the goal.

¶ 29 The dissent argues grandmother should have appealed the court's order denying her motion for temporary custody because the court made "a temporary disposition of custody while making a final de-

---

8. The State does not rely on the dismissal of grandmother's permanent custody petition to support its waiver argument under *T.S.*, nor could it so rely. Although grandmother could have appealed the dismissal of her permanent custody petition because the court finally determined one particular legal relationship, her failure to appeal does not preclude her appeal of the dismissal of her adoption petition. The dismissal of grandmother's custody petition did not sever any rights grandmother had, as did the court order in *T.S.*; rather, it simply did not extend additional rights and responsibilities as requested. Further, the final disposition of the children was still pending before the court, so there had been no final resolution regarding grandmother's relationship to the children.

Finally, the adoption petition addresses different issues than a petition for permanent custody. In a permanent custody arrangement, parents retain residual rights to the children. In contrast, adoption severs all parental rights, and creates a new legal child-parent relationship. Accordingly, grandmother's failure to appeal the summary dismissal of her permanent custody petition does not bar her appeal from the dismissal of her adoption petition.

termination regarding the allegations in [appellant's] underlying petition." *In re T.H.*, 860 P.2d 370, 374 (Utah Ct.App.1993). However, this refers to the assignment of temporary custody of children after allegations in a dependency or abuse petition are finally determined in a civil proceeding, thereby depriving parents of custody temporarily. No such petition was at issue here. The court only denied a motion for temporary custody. Grandmother requested that one temporary custodian, DCFS, be dismissed and the temporary custody of the children be awarded to grandmother as another temporary custodian. Custody was temporary rather than permanent because the court could still return the children to the parent's home. Although the court made findings that grandmother was not an appropriate placement for the children at that time, it did not adjudicate grandmother's parental capacity. Thus, grandmother's custodial rights had not been finally determined at the temporary custody evidentiary hearing and she still had a legal relationship with her grandchildren.

¶ 30 Moreover, practical policy considerations require that we reject the State's view. It would be a procedural nightmare if all interim rulings on temporary custody in the juvenile court were appealable as final orders. Potentially, each periodic review order continuing DCFS custody would be subject to immediate appeal. *See* Utah Code Ann. §§ 78–3a–121, 78–3a–310 (Supp.1998) (providing for continuing jurisdiction of juvenile court and periodic review of children's status). Further, if a hearing on temporary custody is the sole opportunity for a relative to challenge a denial of custody, what is now a short and focused hearing on temporary kinship placement would become unwieldy and complex, and would decide important issues prematurely.

¶ 31 After the temporary custody hearing, parental status and permanent placement of the children were still open questions for the court. Thus, because grandmother's legal rights and status in relation to the children were not finally determined, she could not have appealed this order. Certainly the failure to appeal an interim custody order does not foreclose a subsequent hearing on the merits of a totally separate issue and proceeding—a petition to adopt. As a result, grandmother's appeal of the dismissal of her adoption petition is properly before this court.

## B. Right to a Hearing

¶ 32 Under Utah law, persons with a special relationship to a child have a right to a hearing on adoption or custody matters. *See In re J.W.F.*, 799 P.2d 710 (Utah 1990); *State ex rel Summers v. Wulffenstein*, 616 P.2d 608 (Utah 1980) (*Summers II*); *State ex rel Summers v. Wulffenstein*, 571 P.2d 1319 (Utah 1977) (*Summers I*); *Wilson*, 554 P.2d at 231. The Utah Supreme Court has recognized that, although only parents have a *vested* right in the custody of a child, under some circumstances the "next of kin, such as [a] grandmother, do have some dormant or inchoate right or interest in the custody and welfare of children who become parentless, so that they may come forward and assert their claim." *Wilson*, 554 P.2d at 231 (holding grandmother had right to hearing before adoption of grandchild when grandmother asserted interest promptly after parental rights terminated). This is a strong interest that should be seriously considered by the juvenile court, "at least to the extent of according ... a hearing and determination on the merits" of an adoption petition. *Id.*

¶ 33 The Utah Supreme Court re-emphasized grandparents' dormant rights in *Summers I*. There, the court rejected the State's argument that where a parent's rights have been terminated, and the parent thereby prohibited from filing a petition regarding custody, the grandparents are likewise prohibited from filing for custody. *See Summers I*, 571 P.2d at 1320–21. The court noted that in a parental rights termination proceeding only parental rights are involved. Thus, even after termination of parental rights, grandparents are not precluded from asserting an interest in the custody of their grandchildren. *See id.* Furthermore, in *Summers II*, the court stated "we view that [dormant custody] interest as being a liberty interest." *Summers II*, 616 P.2d at 610.

¶ 34 In this case, grandmother has a sufficient connection to her grandchildren to warrant the right to a hearing on her petition for adoption. She had regular contact with the children prior to DCFS custody; she took care of the children for extended periods; and she asserted her interest in the children promptly and offered to provide the children with a stable home and support. In sum, grandmother's relationship to her grandchildren under the circumstances of this case entitles her to a hearing on her adoption petition.

### C. Res Judicata Effect of August 22, 1997, Hearing

¶ 35 In its order dismissing grandmother's adoption petition without an evidentiary hearing, the juvenile court accepted the State's position that the August 22, 1997, hearing regarding temporary custody satisfied any right grandmother had to a hearing on her adoption petition, and res judicata banned further consideration of all issues involving her and her grandchildren. The dissent addresses this issue by asserting that the findings of the temporary custody hearing somehow became binding in all subsequent proceedings concerning the children and were the law of the case in the adoption proceedings. We disagree.

¶ 36 The purposes of res judicata include promoting "judicial economy and the convenience afforded by finality in legal controversies." *In re J.J.T.*, 877 P.2d 161, 163 (Utah Ct.App.1994). However, this court has often expressed concern over strictly applying the doctrine of res judicata in a juvenile court setting when the best interests of children are at stake. *See In re T.J.*, 945 P.2d 158, 162 n. 2 (Utah Ct.App.1997) (noting with approval that many states have "concluded that a strict application of res judicata in parental termination proceedings is not warranted"); *In re R.N.J.*, 908 P.2d 345, 350 (Utah Ct.App.1995) (noting in some circumstances, "furtherance of judicial efficiency and equity must give way when the central issue to be decided concerns the best interests of a child"); *In re J.L.W.*, 900 P.2d 543, 549 (Utah Ct.App.1995) (noting application of equitable doctrines such as res judicata is inappropriate to "promote mere judicial efficiency at the expense of a child's welfare"); *In re J.J.T.*, 877 P.2d 161, 163 ("[A] hypertechnical application of res judicata is improper in adjudications where the welfare of children is at stake."); *see also T.J.*, 945 P.2d at 164 (Wilkins, J., concurring) (noting res judicata would not bar claims in juvenile court because, by their nature, claims involving children would be different with passage of time).

¶ 37 Furthermore, the doctrine of res judicata simply is not legally applicable in this case. Res judicata has two branches: claim preclusion, barring the relitigation of previously litigated claims between the same parties; and issue preclusion, barring relitigation of issues decided, although the causes of action or claims are not the same. *See T.J.*, 945 P.2d at 162.

¶ 38 Claim preclusion involves three elements:

> First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits.

*J.J.T.*, 877 P.2d at 163 (quoting *Madsen v. Borthick*, 769 P.2d 245, 247 (Utah 1988)).

¶ 39 We conclude claim preclusion does not bar grandmother's adoption petition because adoption was not raised in the August 22 hearing, nor could it have been presented. The evidentiary hearing was for the specific purpose of determining whether grandmother would be a suitable kinship placement for temporary custody of the children when the goal was reunifying the children with their mother. Temporary custody is the right to take care of the children during a transitional time. Parents of the child retain residual rights, and the court retains continuing jurisdiction. By definition, temporary custody is not a permanent placement. Different rights and duties are involved in temporary custody versus adoption. It follows that holding an evidentiary hearing on temporary custody does not

equate with a hearing regarding adoption. Thus, grandmother's adoption petition is not barred by claim preclusion.[9]

¶ 40 "Issue preclusion, or collateral estoppel, 'involves two different causes of action and only bars those issues in the second litigation necessarily decided in the first.'" *T.J.*, 945 P.2d at 163 (citation omitted). Utah courts apply a four-part test to evaluate collateral estoppel:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. Was the issue in the first case competently, fully, and fairly litigated?

*Id.* (quoting *State ex rel. Dep't of Soc. Serv. v. Ruscetta*, 742 P.2d 114, 116 (Utah Ct.App. 1987)).

¶ 41 The State essentially argues "custody is custody," and because the court found in August 1997 that grandmother was not an appropriate temporary placement for the children when the goal was reunification, she is barred from litigating her claim for adoption. However, as previously explained, the issue decided in the prior adjudication was not identical to the issue in the adoption petition. The hearing and the court's findings went only to the issue of whether grandmother would be an appropriate *temporary* placement for the children. The legal issues of temporary custody and permanent adoption are different; therefore separate hearings are required.

¶ 42 The juvenile court apparently tried to adapt a hearing, held for one specific purpose, to another purpose. Judicial economy cannot justify the double use of hearings when the purpose behind the hearings involves different issues of fact and law. *See A.E. v. Christean*, 938 P.2d 811, 816 (Utah Ct.App.1997). A hearing to determine

temporary custody when reunification is the goal involves different issues of fact and law than a hearing on a petition for adoption. One cannot substitute for the other. The prior evidentiary hearing was insufficient for the purposes of the adoption petition.

¶ 43 The dissent contends that because grandmother did not challenge the findings from the evidentiary hearing on temporary custody and failed to allege new circumstances, those findings became the law of the case. Thus, no additional hearing would be required. However, the very nature of the proceedings involved demonstrates a significant change in circumstances.

¶ 44 The temporary custody hearing took place when reunification was still a goal and a possibility. The adoption petition reflected that the goal for the children had changed to a permanent placement through adoption; restoring custody to the children's parent was no longer an option. Also, the legal significance of adoption differs from temporary custody, requiring a different commitment and resulting in different legal consequences. Although grandmother did not specifically allege changed circumstances in her petition, the change in the goal for placement of the children and the legal posture of the continuing juvenile court proceedings provide sufficient changed circumstances to warrant a new evidentiary hearing. Thus, the temporary custody hearing could not preclude a hearing on grandmother's adoption petition.

¶ 45 Additionally, because of the evolving nature of child welfare proceedings in juvenile court, strict application of res judicata makes little sense in a series of juvenile court hearings. The frequent hearings regarding the status of children within juvenile court jurisdiction demonstrate that children's needs and circumstances can, and do, change rapidly. Juvenile courts maintain continuing jurisdiction which enables them to review and re-evaluate children's needs. The res judicata doctrine does not lend itself well to

---

9. Also, the adoption petition is not precluded as a claim that could and should have been raised in the earlier proceeding. At the time of the hear-ing regarding temporary custody, reunification services were still being provided to the mother, and the children were not available for adoption.

such a setting, when passage of time itself can result in substantially different circumstances. *See, e.g., T.J.,* 945 P.2d at 164 (Wilkins, J., concurring) (noting in juvenile court actions raising res judicata claims, "the claims are practically never the same, nor are they likely ever to be," because of time passing).

¶ 46 In addition, due process concerns are implicated when a hearing for one purpose serves a second purpose involving different issues. Due process requires "timely notice which adequately informs the parties of the specific issues they must prepare to meet." *L.A.W. v. State,* 970 P.2d 284, 294 (Utah Ct.App.1998). Furthermore, parties are "entitled to notice that a particular issue is being considered by a court." *Id.* at 295. "[A]dequate notice and an opportunity to be heard in a meaningful way are the very heart of procedural fairness." *Id.* at 294. Due process is not met when notice is ambiguous or insufficient to identify the issues to be considered, thus impeding a party's preparation for the proceedings. *See id.*

¶ 47 In this case, grandmother had no notice that a hearing regarding temporary custody would resolve issues of adoption as well. She had no notice that the court would consider this single evidentiary hearing to be dispositive of other issues not specifically raised at the hearing. The hearing was styled only as a hearing on a motion for temporary custody; nothing in the notice of the proceedings would indicate that fitness for adoption would be settled by this hearing.

### D.  Statutory Interpretation

¶ 48 The juvenile court also based its dismissal of grandmother's adoption petition on what the court considered the petition's legal insufficiency under provisions of the adoption statute.

¶ 49 Utah law provides that "[a]ny minor child may be adopted by an adult person." Utah Code Ann. § 78–30–1 (1996). An adoptive parent must be at least ten years older than the adoptive child. *See id.* § 78–30–2. There are no other specific requirements for petitioners *before* they may *file* an adoption petition. *See id.* §§ 78–30–1 to –19.

"[T]here are virtually no restrictions on or exceptions to the right to petition contained in the statute." *In re Adoption of W.A.T.,* 808 P.2d 1083, 1085 (Utah 1991).

¶ 50 Furthermore, adoption petitioners are entitled to a hearing under the adoption statute. "The court shall conduct a full hearing on the petition for adoption and examine the parties in interest under oath." Utah Code Ann. § 78–30–14(5) (1996). This explicit language grants a right to a hearing even though other sections would permit the court to dismiss the petition. *See id.* § 78–30–14(6) (1996) (providing if DCFS placement report disapproves of adoption, court may dismiss petition); *id.* § 78–30–3.5(5) (Supp.1998) (providing court may dismiss petition if person or agency conducting pre- or postplacement evaluations disapproves adoption). The discretionary dismissal of a petition after an unfavorable report reflects the court's role in evaluating a range of evidence to determine the child's best interests.

¶ 51 The juvenile court found the children did not live with grandmother for six months and that no postplacement report was filed. While true in fact, this has no legal bearing on grandmother's right to file a petition for adoption and thus her right to a full hearing on her petition. The requirements of a postplacement report and residence with prospective adoptive parents for six months must be met prior to *finalizing* an adoption decree, not before a petition may be filed. *See id.* § 78–30–3.5(4) (Supp.1998); *id.* § 78–30–14(7) (1996).

¶ 52 The court also noted that DCFS had not given consent to grandmother to adopt the children, thus the petition was without merit as a matter of law. Consent from the agency placing a child for adoption is necessary prior to adoption. *See id.* § 78–30–4.14(1)(g). The dissent agrees that lack of DCFS consent obviated the need for an adoption hearing. However, once again this prerequisite for final adoption does not preclude a hearing on the merits of grandmother's adoption petition.

¶ 53 The State, relying on *Kasper v. Nordfelt,* 815 P.2d 747, 748 (Utah Ct.App.1991), argues the lack of DCFS consent effectively

ends the petition. Such reliance on *Kasper* is misplaced. In *Kasper*, this court found that the grandparents' rights in a child were extinguished when the mother and sole parent of the child voluntarily relinquished the child to a private adoption service for adoption. *See id.* This court concluded the grandparents' petition to adopt the child was meritless because they did not have the agency's consent, and the agency had selected other parents. *See id.* at 749. *Kasper* is different from the case at hand because the agency was a private agency with whom the mother deliberately and thoughtfully chose to place her child. The mother appropriately exercised her own rights, and the grandparents could not interfere with such an exercise.

¶ 54 In contrast, this case involves a State termination of parental rights, parentless children, and grandparents attempting to exercise their inchoate interests in custody of such children when the children are in the temporary custody of the State. In arguing that no adoption petition can be filed or heard on its merits without first obtaining DCFS consent, DCFS in effect is attempting to insulate from judicial review the key decisions of a state agency. This court has previously rejected the State's implicit assertion that DCFS decisions and actions in withholding consent to adoption are beyond judicial review. *See In re Adoption of J.J.*, 781 P.2d 465, 472 (Utah Ct.App.1989) (memorandum decision) (per curiam). We noted that DCFS lacks " 'power to confer legal custody, which by its nature is a judicial act. If one desires to assert an interest in a child in the legal custody of [DCFS], such a proceeding is a judicial function.' " *Id.* at 469 (quoting *Summers I*, 571 P.2d at 1322). Thus, because it is the province of the court to determine legal custody of children within its jurisdiction, the lack of DCFS consent does not bar a hearing on grandmother's adoption petition. On the contrary, the court is the prop-

er place for a petitioner to challenge the withholding of consent by the state agency.

¶ 55 In sum, we conclude the juvenile court incorrectly interpreted and applied provisions of the adoption statute in determining grandmother's adoption petition should be dismissed without a hearing on the merits.[10]

CONCLUSION

¶ 56 Grandmother has no standing to appeal the order terminating D.M.'s parental rights. However, we conclude the juvenile court erred in dismissing grandmother's adoption petition without holding an evidentiary hearing on the merits: Grandmother has a special relationship with the children sufficient to entitle her to a hearing; the court erred in relying on an evidentiary hearing held on temporary custody more than one year earlier to satisfy grandmother's right to a hearing; and finally, the court misinterpreted provisions of the adoption statute in concluding the petition was legally insufficient. We thus reverse and remand for an evidentiary hearing on the merits of grandmother's petition to adopt her grandchildren.

¶ 57   I CONCUR: NORMAN H. JACKSON, Judge.

BENCH, Judge (concurring and dissenting):

¶ 58 I fully concur with the majority in holding that appellant grandmother has no standing to appeal the order terminating D.M.'s parental rights. I dissent, however, from that portion of the opinion concluding that the juvenile court erred in dismissing appellant's adoption petition.

¶ 59 The majority opinion states: "It is clear under Utah law that persons with a special relationship to a child have a right to a hearing on adoption or custody matters." Indeed, the cited cases squarely stand for that proposition. *See, e.g., In re J.W.F.*, 799

---

**10.** The Guardian Ad Litem additionally argues the petition must allege that the children live with the petitioners, and absent such allegation, the petition fails. We can find no support for this reading of the statute and have found several cases in which petition filings were upheld even without an allegation of custody. *See, e.g., Wil-*

*son v. Family Servs. Div., Region Two*, 554 P.2d 227 (Utah 1976); *In re J.W.F.*, 799 P.2d 710 (Utah 1990). Also, grafting this additional requirement onto the statute would potentially insulate DCFS's actions from judicial review by requiring actual custody before asserting any interest.

P.2d 710, 714 (Utah 1990); *Summers v. Wulffenstein,* 571 P.2d 1319, 1322 (Utah 1977); *Wilson v. Family Servs. Div., Region Two,* 554 P.2d 227, 231 (Utah 1976). In each of the cited cases, the juvenile court had summarily dismissed a petition for custody without any hearing or determination on the merits.

¶ 60 The case at bar is easily distinguished. Here, the juvenile court provided appellant a full evidentiary hearing on her motion for custody in August 1997. After considering all the testimony and evidence presented, the juvenile court entered detailed findings, which included the following:

9. The March 15, 1997, visit [with appellant] was supervised by Jennifer E. Fordham, Ph.D. psychologist. All three children regressed and deteriorated during and after the visit. During the visit, [appellant] inappropriately responded to the emotional needs of the children and didn't demonstrate appropriate levels of concern for the children. [M.] "shutdown" emotionally and [J.] withdrew from his grandmother during the course of the visit;

. . . .

15. [D.M.] has a history of domestic problems with males that has negatively impacted the children. [Appellant] knew or should have known of the problems yet did nothing to intervene;

16. At a June 3, 1997, hearing, the grandmother was ordered by this Court to contact appropriate treatment resources in her community that would be available for the children should they be placed with her. She was ordered to provide the information to the assigned Utah caseworker who was directed to assess the appropriateness of the services. It wasn't until August 20, 1997, two days before the hearing [on] the grandmother's motion for custody that [she] provided the requested information. The information provided consisted of resumes of two psychologist[s] and flyers about available programs[,] many of which were not appropriate for the needs of the children;

17. The grandmother does not appreciate the nature and severity of the neglect and abuse her grandchildren have experienced.

She discounts and minimizes the children['s] problems and has never expressed any empathy for her grandchildren to the caseworker;

18. The children have stated that they do not feel safe in their grandmother's home. The children are apprehensive about living with [appellant's husband] who would be their primary caretaker during the work week as [appellant] is employed full time;

19. It is likely that the grandmother would allow the mother unauthorized access to the children if they were placed with her, since she doesn't appear to understand the gravity of the neglect and abuse the children have suffered;

. . . .

21. Any placement or therapeutic disruptions would be detrimental to the children. [J.] is in need of long term treatment and any interruption of his therapeutic relationships would be detrimental to him. It would likely take at least six months for the children to form a therapeutic relationship with another therapist.

22. [Appellant] loves her grandchildren and has a strong desire to assume custody of them but the children do not appear to share an emotional attachment with their grandmother.

The court then concluded,

Placement of the above-named children with the maternal grandmother and stepgrandfather would not be in the children['s] best interest for the following reasons:

a) The children are not comfortable with [appellant and her husband];

b) [Appellant] does not recognize the parent[s'] history of abuse of the children;

c) [Appellant] is not strong enough or committed enough to resist inappropriate requests by their mother for access to the children in accordance with the Court orders;

d) [Appellant] is not committed to providing the proper therapeutic care for the children.

¶ 61 After entering these findings of fact and conclusions of law, the juvenile court

ordered that temporary custody and guardianship of the children remain with DCFS. *See Summers v. Wulffenstein,* 616 P.2d 608, 611 (Utah 1980) ("The Court showed, in our opinion, a high degree of sensitivity to the desire of the appellant to raise her grandchildren, but in deciding what would be in the best interest of the children involved—which was the Court's paramount duty—decided that custody should remain with DFS . . . .") (footnote omitted). Consequently, at the August hearing the court clearly made "a temporary disposition of custody while making a final determination regarding the allegations in [appellant's] underlying petition." *In re T.H.,* 860 P.2d 370, 374 (Utah Ct.App.1993). Appellant did not contest the court's ruling.

¶ 62 Instead of challenging the juvenile court's custody determination, appellant filed a verified petition alleging that the children were dependent, and requesting that the court grant her permanent custody. At the December 3, 1997 hearing on this petition, appellant's counsel argued the dependency and custody issues to the juvenile court. After this hearing, the court found that the same parties participated in the August hearing, which adjudicated the same issues now raised in this petition. More importantly, the court found appellant's petition "legally insufficient on its face; the children are not dependant, they are in State's care." The court therefore properly dismissed the deficient petition.

¶ 63 Subsequently, appellant filed a petition for adoption. In this petition, appellant reasserted the same facts that the juvenile court had addressed at the August hearing. Once again, appellant wholly failed to assert any new or changed circumstances. The juvenile court had already adjudicated and resolved these facts at the full evidentiary hearing in August 1997. Because these findings remained unchallenged, they became the law of the case and are binding in subsequent proceedings. *See In re T.S.,* 927 P.2d 1124, 1127 (Utah Ct.App.1996); *see also Richardson v. Grand Cent. Corp.,* 572 P.2d 395, 397 (Utah 1977) (stating purpose of law of the case doctrine is "to avoid the delays and the

difficulties involved in repetitious contentions and rulings upon the same proposition in the same case"); *Salt Lake City Corp. v. James Constructors,* 761 P.2d 42, 45 (Utah Ct.App. 1988) ("The law of the case doctrine is particularly applicable when . . . a subsequent motion fails to present the case in a different light, such as when no new, material evidence is introduced.").

¶ 64 Appellant contends that the juvenile court's previous temporary custody determination cannot be applied to the adoption petition relating to permanent custody. At the August hearing, however, the juvenile court adjudicated the very same issues presented in the adoption petition. The court's ruling on the underlying issues raised in appellant's first petition was a final determination on the merits as applied to appellant. *See In re T.H.,* 860 P.2d at 374. Thus, because appellant failed to assert any change of circumstances on her part, there was no need for the juvenile court to conduct another full evidentiary hearing on the same issues it had previously adjudicated.[1] Without changed circumstances, adoption placement with appellant would not be in the children's best interests. *See* Utah Code Ann. § 78–30–1.5 (1996) ("It is the intent and desire of the Legislature that in every adoption the best interest of the child should govern and be of foremost concern in the court's determination."). This is especially true, in light of the fact that "[a] final decree of adoption may not be entered until the child has lived in the home of the adoptive parent or parents for six months." *Id.* § 78–30–14(7) (1996). Therefore, the juvenile court could not grant appellant the relief she requested in her adoption petition because she never had custody of the children.

¶ 65 Additionally, at the October 15, 1998 hearing on the State's motion to dismiss appellant's adoption petition, the court found, "The State of Utah is the current custodian and guardian of the children and the State opposes the adoption by the grandparents. The State's consent is necessary pursuant to [section] 78–30–4.14(1)(g) inasmuch as DCFS is the licensed child placing agency for the

---

1. Although the children's circumstances may have changed, appellant must show how her circumstances have changed since the court entered its findings regarding custody.

children." The court then properly dismissed the petition because appellant made no showing that she obtained the statutorily required consent for adoption from DCFS. *See* Utah Code Ann. § 78–30–4.14(1)(g) (1996) (providing consent to adoption is required from "the licensed child-placing agency . . . that is placing the child for adoption"); *see also Kasper v. Nordfelt*, 815 P.2d 747, 749 (Utah Ct.App.1991) (holding court did not err in dismissing grandparents' adoption petition because without consent of child placement agency, their adoption petition was meritless).

¶ 66 It is true that custody decisions are not forever set in stone and remain subject to modification "on the ground that a change of circumstances has occurred." Utah Code Ann. § 78–3a–903(1) (Supp.1998); *see also Larson v. Larson*, 888 P.2d 719, 722 n. 2 (Utah Ct.App.1994) (noting when modifying custody order "[t]he court's obligation is to evaluate whether a particular change in circumstances justifies upsetting the status quo in order to achieve what is in the best interests of the children."). Appellant has never petitioned the juvenile court to modify its custody orders based on a change of circumstances. Although appellant attempts to assert changed circumstances to this court on appeal, she failed to ever make that argument to the juvenile court. " 'The appellate courts of this state have consistently refused to address issues . . . that are raised for the first time on appeal. This principle applies equally to proceedings originating before the juvenile courts.' " *In re M.L.*, 965 P.2d 551, 563 (Utah Ct.App.1998) (quoting *In re E.D.*, 876 P.2d 397, 401 (Utah Ct.App.1994) (citations omitted)). We are therefore precluded from addressing these issues on appeal.

¶ 67 It should be further noted that although appellant contends she was denied temporary custody because out-of-state placement of the children would have interfered with parental reunification services, the juvenile court made no such finding. The juvenile court made no indication in its findings of fact or conclusions of law that this was a factor in denying appellant temporary custody. To the contrary, the court's findings indicate its genuine concern about appellant permitting "the mother unauthorized access to the children if they were placed with her, since she doesn't appear to understand the gravity of the neglect and abuse the children have suffered." *See Mullins v. Oregon*, 57 F.3d 789, 797 (9th Cir.1995) ("Also, we note that grandparents sometimes may be unsuitable adoptive parents precisely because of their blood relationship, especially in cases of abuse such as this in which there may be a well founded fear that the grandparents will be unable to protect the children from future parental contact and abuse.").

## CONCLUSION

¶ 68 I agree that certain people, because of their special relationship to a child, are entitled to a hearing and "a determination as to whether it would be in the best interests of the child for them to have custody." *In re J.W.F.*, 799 P.2d at 714 (citing *Wilson*, 554 P.2d at 230). In this case, however, appellant received a full and fair hearing on her motion for custody. After careful consideration, and based on the children's best interests, the juvenile court denied the motion. Appellant never directly challenged the court's ruling by appeal or through a petition to modify the custody order. Therefore, the juvenile court's ruling on the custody issue became the law of the case when appellant raised the same issue in subsequent petitions.

¶ 69 Accordingly, I would affirm the juvenile court, and hold that it properly dismissed appellant's adoption petition.