**2016 UT App 98**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF Z.G.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

H.V.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20150457-CA
Filed May 12, 2016

Third District Juvenile Court, Salt Lake Department
The Honorable Kimberly K. Hornak
No. 1106176

Julie George, Attorney for Appellant

Sean D. Reyes and John M. Peterson, Attorneys
for Appellee

Martha Pierce, Guardian ad Litem

SENIOR JUDGE RUSSELL W. BENCH authored this Opinion, in which
JUDGES GREGORY K. ORME and J. FREDERIC VOROS JR. concurred.[1]

BENCH, Senior Judge:

¶1    H.V. (Guardian) appeals the juvenile court's ruling
declining to order reunification services. We affirm.

---

1. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

## BACKGROUND

¶2    Guardian was awarded permanent custody and guardianship of Z.G. (Child) in December 2014 after Child was adjudicated to have been neglected by her mother. Two months later, Child was temporarily removed from Guardian's custody due to police involvement but was soon returned. Just six weeks after that, Guardian was arrested on drug charges. On April 7, 2015, the Division of Child and Family Services (DCFS) filed a verified petition alleging that Guardian had been incarcerated and that Guardian's mother, who had been caring for Child since Guardian's arrest, could not provide long-term care for Child. The juvenile court adjudicated Child neglected by Guardian and granted custody and guardianship of Child to DCFS.

¶3    Apparently anticipating that Guardian might request reunification services, Child's appointed guardian ad litem moved the court to deny reunification services to Guardian. The juvenile court held a hearing on the motion and determined that under Utah Code section 78A-6-312, Guardian did not have standing to request reunification services and that even if she did have standing, reunification was not in Child's best interests.

## ISSUE AND STANDARDS OF REVIEW

¶4    Guardian appeals the juvenile court's order denying reunification, arguing that the juvenile court erred in determining that she lacked standing to request reunification services under the Juvenile Court Act. The juvenile court's "interpretation of the Juvenile Court Act is a question of law, reviewed for correctness." *In re S.F.*, 2012 UT App 10, ¶ 24, 268 P.3d 831. The ultimate decision whether to provide or deny reunification services is a determination that we review for abuse of discretion. *In re N.R.*, 967 P.2d 951, 956 (Utah Ct. App. 1998).

ANALYSIS

## I. Permanent Guardians Have Standing to Seek Reunification Services.

¶5     The Juvenile Court Act is unclear as to whether reunification services are available to non-parents. However, Guardian and the State agree that "the best interpretation of the [Juvenile Court Act] is that they are." Having reviewed the statute, we agree that an individual who has been granted permanent custody and guardianship over a minor child has standing to seek reunification services when that child is involuntarily removed from his or her custody.

¶6     First, we look to the statutory language to determine the legislature's intent. "We analyze the language of a statutory provision in light of other provisions within the same statute or act, and we attempt to harmonize the provisions in accordance with the legislative intent so as to give meaning to each provision." *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. City of Bountiful*, 2002 UT 60, ¶ 10, 52 P.3d 1174.

¶7     Section 78A-6-312, governing reunification services, indicates that if the court has ordered "continued removal at the dispositional hearing, and that the minor remain in the custody of the division," then the court shall (1) "establish a primary permanency plan for the minor" and (2) determine whether "reunification services are appropriate for the minor and the minor's family." Utah Code Ann. § 78A-6-312(2) (LexisNexis Supp. 2015). Further provisions in this section pertaining to actions the court should take in facilitating or terminating reunification services refer specifically to "parents" and do not mention guardians. *Id.* § 78A-6-312. However, other sections of the Juvenile Court Act appear to contemplate reunification services for guardians. For example, section 78A-6-306 requires DCFS to report to the juvenile court at the shelter hearing "the

available services that could facilitate the return of the child to the custody of the child's parent *or guardian*" and directs the court to determine whether "the provision of . . . services" could permit the child to be "safely returned to the custody of the . . . parent *or guardian*." *Id.* § 78A-6-306(6), (10) (emphasis added). Likewise, section 78A-6-314 contemplates the return of a minor to a "parent *or guardian*" following reunification services and outlines circumstances where the juvenile court might determine, after reunification services have been ordered, that a minor should not be returned to a "parent *or guardian*." *Id.* § 78A-6-314(2), (4) (emphasis added). Despite the language of section 78A-6-312, it would be inconsistent for the legislature to include language in sections 78A-6-306 and 78A-6-314 referring to guardians if it intended that reunification services be provided only to parents.

¶8     This conclusion is further supported by the fact that provisions in the Juvenile Court Act contemplate the possibility that a guardian may be responsible to provide financial support for a child when the child is in the custody of DCFS. *See id.* § 78A-6-306(2)(f) (providing that when a child has been removed from his or her home or placed in the custody of DCFS, DCFS "shall issue a notice that contains . . . a statement that the parent *or guardian* is liable for the cost of support of the child" (emphasis added)); *id.* § 78A-6-1106(1) (providing that when legal custody of a child has been vested in an organization or individual other than the child's parents, "the court shall order the parents, a parent, or *any other obligated person* to pay child support for each month the child is in custody" (emphasis added)). *But see id.* § 75-5-209(4)(a) (providing in the context of the Uniform Probate Code that "a guardian of a minor is not . . . legally obligated to provide from the guardian's own funds for the ward"). Indeed, the juvenile court's order adjudicating Child neglected by Guardian ordered Guardian to "contact the Office of Recovery Services (ORS) to determine a support amount for the period that [Child] is in the custody of DCFS." It would be

inconsistent with the apparent intent of the legislature and public policy to conclude that a guardian retains financial duties to a child who has been removed from his or her custody but does not have the right to seek reunification services.[2]

¶9    Furthermore, our case law on the subject, while not determinative, appears to contemplate the possibility that a permanent guardian could obtain reunification services. For example, in *In re K.G.*, 2009 UT App 116U (per curiam), we acknowledged the possibility that a guardian could receive reunification services but did not reach the question, because the aunt seeking reunification had never obtained legal recognition as the child's guardian. *Id.* para. 3 & n.2. Likewise, in *In re T.S.*, 927 P.2d 1124 (Utah Ct. App. 1996), we left open the question of whether a permanent guardian might be entitled to rights akin to those of a parent, though we ultimately did not reach that issue because we determined that the guardian in that case had waived it. *Id.* at 1127.

¶10    Finally, denying permanent guardians the opportunity to seek reunification is inconsistent with permanent guardianship being a stable, long-term permanency goal. Along with reunification and adoption, guardianship is one of the main potential permanency goals when a child has been removed from his or her home due to abuse or neglect. *See* Utah Admin. Code R512-300-4(4)(b) (listing reunification, adoption,

---

2. Guardian asserts that permanent guardians retain a bundle of "residual rights" following removal and granting of temporary custody to DCFS. This argument is unpreserved and, apart from its application to reunification services, undeveloped on appeal. Thus, while we conclude that a permanent guardian has the right to seek reunification services, we do not consider whether other residual rights, similar to those enjoyed by parents, might apply to permanent guardians.

guardianship, and "[i]ndividualized [p]ermanency" as potential permanency goals); Utah Code Ann. § 78A-6-314(4) (directing the juvenile court, once it has terminated reunification services, to determine "whether termination of parental rights, adoption, or permanent custody and guardianship is the most appropriate final plan for the minor"). Indeed, it is considered such a permanent arrangement that the Juvenile Court Act precludes a parent from filing a petition for restoration of custody "during the existence of a permanent guardianship established for the child." Utah Code Ann. § 78A-6-1103(3)(b) (LexisNexis Supp. 2015). The only other circumstances where such a petition is precluded are where the child is in a secure youth corrections facility or the parent's parental rights have been terminated. *See id.* § 78A-6-1103(1), (3)(a). Guardianship also divests parents of certain residual parental rights. *Id.* § 78A-6-105(35)(b). In light of the status the legislature has granted permanent guardianship, we cannot see how it would further the goals of the legislature to deny permanent guardians any opportunity to obtain reunification services.

¶11 For these reasons, we conclude that permanent guardians have standing to seek reunification services. We now turn to the question of whether the juvenile court exceeded its discretion by granting the guardian ad litem's motion to deny services to Guardian.

## II. The Juvenile Court Did Not Exceed Its Discretion in Denying Reunification Services to Guardian.

¶12 Despite agreeing with Guardian that she had standing to seek reunification services, the State maintains that the juvenile court acted within its discretion in determining that reunification services were not in Child's best interests under the circumstances of this case. Guardian does not address this issue and instead requests that we remand the case for the juvenile court "to consider whether a grant of reunification services to

[Guardian] is warranted." Because the juvenile court already addressed this issue, in spite of its alternative ruling that Guardian lacked standing, we decline to remand the case.

¶13 Even parents have no absolute right to receive reunification services. *In re N.R.*, 967 P.2d 951, 955–56 (Utah Ct. App. 1998).

> Whenever the court orders continued removal at the dispositional hearing, and that the minor remain in the custody of the division, the court shall first: (a) establish a primary permanency plan for the minor; and (b) determine whether, in view of the primary permanency plan, reunification services are appropriate for the minor and the minor's family . . . .

Utah Code Ann. § 78A-6-312(2) (LexisNexis Supp. 2015). Thus, "reunification services need only be considered when they are implicated by the primary permanency goal for a child." *In re A.T.*, 2015 UT 41, ¶ 17, 353 P.3d 131.

¶14 Here, the juvenile court found that "ordering reunification services to [Guardian] would not be in the best interests of" Child. The court observed that in a very short period of time, Child had been removed from her mother, removed from Guardian twice, and given up by Guardian's mother. The court expressed reluctance to leave Child in limbo while Guardian or Child's parents attempted to get their lives back on track: "And how long am I supposed to put [Child's] life on hold? She's almost three years old. Until she's five? Until she's six? Until she's 16?" The court was also concerned with Guardian's lack of honesty regarding her drug use. Given these concerns, the juvenile court did not exceed its discretion in determining that reunification services were not in Child's best interests.

CONCLUSION

¶15     We determine that a permanent guardian has standing to seek reunification services. However, under the circumstances of this case, the juvenile court did not exceed its discretion in determining that reunification services were not in Child's best interests. Accordingly, we affirm the juvenile court's grant of the guardian ad litem's motion to deny reunification services to Guardian.

———————